B. David Jarashow, Esq. (BDJ-7636)
Law Offices of B. David Jarashow, P.A.
31 West Main Street – 2nd Floor
Freehold, New Jersey 07728
(732) 303-6330
Attorneys for Plaintiffs

FILED by AJS D.C.

JAN 14 2013

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ADELAIDE KING AND MICHAEL STOLL,

Plaintiffs

vs.

CARNIVAL CORPORATION, a Corporation of the Republic of Panama; CARNIVAL PLC, a Corporation of The United Kingdom; COSTA CROCIERE, S.p.A, a Corporation of the Republic of Italy, and JOHN DOES 1-10

Defendants.

Civil Action No.

**COMPLAINT AND JURY DEMAND**

Plaintiffs, Adelaide King and Michael Stoll, (hereinafter collectively "Plaintiffs"), by way of Complaint against Defendants, CARNIVAL CORPORATION, a Corporation of the Republic of Panama (with offices in Miami, Florida); CARNIVAL PLC, a Corporation of The United Kingdom (with offices in Miami, Florida); COSTA CROCIERE, S.p.A, a Corporation of the Republic of Italy (with offices in Hollywood, Florida), and JOHN DOES 1-10, (hereinafter collectively "Carnival" or "Defendants") state as follows:

## FACTS

1. Plaintiffs, Adelaide King and Michael Stoll at all times relevant to the complaint, resided in Brick, New Jersey.

2. CARNIVAL CORPORATION, per its website, is the largest vacation company in the world. Its portfolio of leading cruise lines includes Carnival Cruise Lines, Holland America Line, Princess Cruises and Seabourn in North America.

3. Carnival Corporation is the parent company of Costa Cruises and its subsidiary, Costa Crociere S.p.A..

4. On January 13, 2012, Costa Cruises' vessel, the Costa Concordia, departed from Civitavecchia, Italy with approximately 3,200 passengers and 1,000 crew members on a seven-day voyage.

5. Costa Concordia was sailing on a Mediterranean cruise from Civitavecchia with scheduled calls at Savona, Italy; Marseille, France; Barcelona, Spain; Palma de Mallorca; Cagliari and Palermo, Italy.

6. At approximately 10:00pm CET, Costa Concordia struck a rock off the coast of Isola del Giglio, tearing a gash in its hull which let water pour into the engine rooms causing significant damage to the vessel which caused it to capsize.

7. Costa Concordia's Captain, Francesco Schettino, delayed the order to abandon ship and deploy the lifeboats.

8. In fact, after the accident, Plaintiffs were specifically told by crew members that there was no problem and that they should just go to the bar and have a complimentary drink.

9. Shortly thereafter, Plaintiffs realized that something was not right, despite the reports from crew members that all was well.

10. Plaintiffs physically felt the vessel tilting to one side.

11. After quickly grabbing some warmer clothes, Plaintiffs proceeded to the life boats where there was mass confusion and chaos.

12. Plaintiffs waited approximately an hour and a half to get on a life boat.

13. When they were finally let on there was no order, just pushing and shoving.

14. Plaintiffs had to run up and down the boat to find an available life boat.

15. There was not enough space on the lifeboats resulting in several trips back and forth because of the tilting of the ship.

16. The ships "left side" lifeboats were useless because of the accident.

17. Plaintiffs remained in a life boat suspended in the air because for a considerable amount of time before an engineer was able to manually lower the life boat into the water.

18. Once Plaintiffs got off the lifeboat several hours after the crash, there was no order and they did not leave Giglio island until the following morning.

19. Plaintiffs were not told anything about where they were going or what was happening. We were basically left stranded in a hotel and had to find our own way out of the country with no assistance from Defendants.

20. During the course of this ordeal, Plaintiffs witnessed people that were injured, dead and/or dying.

21. Based on a video recordings of the events, Captain Schettino, instead of being the last man to leave the vessel and using all reasonable efforts to assure that all passengers and crew

members are evacuated to safety, breached his duty as the master of his vessel, and abandoned his ship at the first available opportunity he had.

22. Based on audio recording of a telephone conversation between the captain and the port authority, Captain Schettino was ordered by the Italian Coast Guard to return to the stricken vessel after he claimed that the evacuation was almost complete when it had scarcely begun.

23. According to reports, Captain Schettino's decision to sail close to Isola del Giglio was attributed by the captain to Defendants' management in putting him under intense pressure to sail the cruise ship close to the island in order to present a spectacle to Costa Concordia's passengers.

24. During a telephone conversation with his friend in the hours after he was arrested, Captain Schettino said: "Management was always saying 'pass by there, pass by there.' Someone else in my position might not have been so amenable to pass so close but they busted my balls, pass by there, pass by there, and now I'm paying for it."

25. Captain Schettino attributed his action to the cruise company encouraging the practice of sailing close to the island because it was good "publicity" and went down well with passengers in the increasingly competitive cruise ship business.

26. As a result of Defendants' conduct (including their acts of concealment), Plaintiffs have suffered and continue to suffer damages.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action because this matter presents a federal question amount in controversy exceeds $75,000, exclusive of interest and costs pursuant. Plaintiffs, ADELAIDE KING AND MICHAEL STOLL, are citizens of a different state than Defendants. This Court also has subject matter jurisdiction.

2. This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction. This Court has personal jurisdiction over the Defendants because they conduct substantial business in the State of Florida, have sufficient minimum contacts with the State, and otherwise avail themselves of the markets in this State, through promotion, sale, marketing, and distribution of their products and services in this State, so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. In fact, Defendant Carnival Corporation, the parent company of Costa, owns several cruise ships that disembark and return to several ports in the State of Florida including: Miami, Port Everglades (Ft. Lauderdale), Port Canaveral, Jacksonville and Tampa. Additionally, Carnival Corporation/PLC and Costa have offices in the Southern District of Florida, specifically Miami and Hollywood, Florida. The State of Florida has a substantial and paramount interest in preventing the practices alleged herein from occurring.

3. Venue properly lies in this district because Defendants conduct substantial business in this judicial district. Furthermore, Defendant Carnival Corporation, the parent company of Costa, owns several cruise ships that disembark and return to several ports in the State of Florida including: Miami, Port Everglades (Ft. Lauderdale), Port Canaveral, Jacksonville and Tampa. Additionally, Carnival Corporation/PLC and Costa have offices in the Southern District of Florida, specifically Miami and Hollywood, Florida.

## COUNT I
### Violation of the Athens Convention Relating to the Carriage of Passengers and their Luggage by Sea

1. Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

2. Defendants failure to implement safety procedures and its acts of negligence such as failing to perform the safety drill, policy failures that allowed a captain to abandon ship before the passengers, and lack or failure of a warning system to notify the crew that they were off course, were negligent acts that knowingly put the Plaintiff in peril of his life.

3. Defendant acted intentionally or recklessly with knowledge that damage would probably result to Plaintiff.

4. As a direct and proximate result of Defendants' negligent conduct, the Plaintiff suffered and continues to suffer damages. Defendants acted intentionally and hence no limits of liability should be applied in this case.

## COUNT II
## BREACH OF CONTRACT

1. Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

2. Defendants offer to sell tickets to Plaintiffs claiming to be a safe cruise liner and offering to take them from Civitavecchia.

3. Plaintiffs accepted Defendants' offer and purchase tickets relying on Defendants express warranty that a trip aboard Defendants' ship was safe and that were going to be taken on a safe manner from Civitavecchia.

4. Defendants breached the contract by not providing a safe trip aboard the Costa Concordia and by failing to arrive safely at its final destination.

5. As a direct and proximate result of Defendants' breach, the Plaintiffs suffered and continue to suffer damages.

6. As a direct and proximate result of Defendants' breach, Plaintiffs have been damaged.

7. Plaintiffs sustained substantial and ascertainable losses of money and/or property and other damages, in an amount to be determined at trial.

## COUNT III
## NEGIGENCE

1. Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

2. Defendants had a duty to Plaintiffs to operate the cruise ship in a safe manner as to avoid causing injury to Plaintiffs. Defendants particularly had a duty to evacuate Plaintiffs on a timely and safe manner as to avoid emotional distress, injury and death to Plaintiffs. In addition, Defendants had a duty to inform Plaintiffs of the dangerous conditions existent in the cruise ship at all times relevant to this complaint. Defendants had a duty to adequately test its warning systems as to avoid dangerous conditions leading to the emotional distress, injury and death of Plaintiffs. Defendants were on notice of the existent danger and failed to evacuate Plaintiffs upon impact as to avoid emotional distress, injury and death to Plaintiffs. Moreover, Defendants had a duty to provide true and accurate information to the Plaintiffs to prevent undue risks arising from the foreseeable acts of Defendants. Defendants had the duty to maintain the Captain aboard the cruise ship as provided by existent laws.

3. Defendants were negligent, and breached the duty owed to the Plaintiffs.

4. As direct and proximate causes of the breach, Plaintiffs have suffered damages.

## COUNT IV
## UNJUST ENRICHMENT

1. Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

2. Plaintiffs conferred a tangible economic benefit upon Defendants by purchasing tickets for the cruise, and by providing services aboard the cruise ship.

3. Failing to require Defendants to provide remuneration under these circumstances would result in them being unjustly enriched at the expense of Plaintiffs.

4. Defendants were and continue to be unjustly enriched at the expense of Plaintiffs and Defendants' retention of the benefit conferred upon them by Plaintiffs would be unjust and inequitable.

## COUNT V
## PUNITIVE DAMAGES

1. Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

2. Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care and was in reckless disregard for the rights of the Plaintiffs. Defendants' conduct has been outrageous and outside the bounds of decency. Defendants should be punished due their conduct of putting others at risk of serious injury and death in order to make more profit. Plaintiffs hereby request an award of punitive damages to appropriately punish Defendants for their extreme misconduct.

## COUNT VI
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

1. Plaintiffs incorporate each of the foregoing paragraphs as if fully set forth herein.

2. Defendants knew, or should have known, that their actions would cause Plaintiffs severe emotional distress.

3. As a proximate result of Defendants actions and the consequences proximately caused by them, as hereinabove alleged Plaintiffs have suffered mental anguish and emotional distress.

## COUNT VII
## NEGLIGENT SUPERVISION

1. Plaintiffs incorporate each of the foregoing paragraphs as if fully set forth herein.

2. Defendants owed Plaintiffs a duty to train, supervise, regulate and discipline their agents and employees, and to assure that the agents and employees were aware of and acting in compliance with their respective duties to Plaintiffs.

3. Defendants knew or should have known about the conduct during the incident misrepresentations and omissions, or negligently remained ignorant to conduct during the incident, and failed to discourage or stop the conduct during the incident, made by their agents and employees.

4. As a direct and proximate result of failing to supervise its agents and employees, Plaintiffs has suffered damages.

## COUNT VIII
## GROSS NEGLIGENCE

1. Plaintiffs incorporate each of the foregoing paragraphs as if fully set forth herein.

2. Defendants engaged in conduct that was grossly negligent, marred by reckless and wanton behavior, and in total disregard of the probability of serious injury to Plaintiffs.

3. That these defendants, by their actions and omissions, were engaging in conduct so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs, and are therefore libel to Plaintiffs for gross negligence.

4. As a direct and proximate result of the gross negligence of Defendants, Plaintiffs have suffered damages.

## JURY DEMAND

TAKE NOTICE that the PLAINTIFFS demand that the issues herein be tried by a jury

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs prays for relief and judgment against the Defendants, including but not limited to:

    A. An award of all actual, general, special, incidental, statutory, punitive, treble and consequential damages to which Plaintiffs are entitled;

    B. an award of pre-judgment and post-judgment interest on such monetary relief;

C. an award of reasonable attorneys' fees, costs and expenses; and

D. such other relief that the Court finds just and appropriate under the circumstances.

*s/B. David Jarashow*
_____
B. David Jarashow, Esq.
Attorney for Plaintiffs

Dated: 1/10/13


B. David Jarashow, Esq. (BDJ-7636)
Law Offices of B. David Jarashow, P.A.
31 West Main Street – 2nd Floor
Freehold, New Jersey 07728
(732) 303-6330

Matthew Maschler, Esq.
Fla Bar ID #0159522
2255 Glades Rd Ste 324a
Boca Raton, FLORIDA, 33431
Phone: 561-208-3334

Attorneys for Plaintiffs